## MACK MASSIE v. THE STATE.

### *No. 7450. Decided June 20.*

1. **Continuance —Diligence.** —In an application for a continuance because of absent testimony, the diligence which has been used to obtain such testimony must be stated under oath, and it is not sufficient diligence to have applied for or to have caused to be issued a subpœna for the absent witness in case the law authorized an attachment to be issued for such witness.

2. **Same—Attachment for Witness.**—When a witness who resides in the county of the prosecution has been duly served with a subpœna to appear and testify in the

case, and fails to so appear, either party is entitled to have an attachment issued to compel him to appear and testify.

3. **Same—Inferences and Presumptions.**—An application for a continuance must be complete within and of itself. It can not be aided by inference or presumption. The presumption of the law is that the ruling of the trial court upon the application is correct.

4. **Same.**—See the opinion for an application for continuance which failed to show legal diligence to obtain absent testimony, and for absent testimony which was not material and not probably true.

5. **Justifiable Homicide—Adultery of Wife.**—Homicide is justifiable when committed by the husband upon the person of any one taken in the act of adultery with the wife, provided the killing take place before the parties to the act of adultery have separated.

6. **Manslaughter.**—To reduce a homicide from murder to manslaughter there must not only have existed adequate cause, but such adequate cause must have produced in the mind of the slayer sudden passion such as is defined by the statute, and in committing the homicide he must have acted under the influence of such passion.

APPEAL from the District Court of Dallas. Tried below before Hon. R. E. Burke.

This conviction is for murder in the second degree with the punishment assessed at confinement in the penitentiary for the term of five years.

The opinion sufficiently states the case.

*I. R. Oeland*, for appellant.

*R. H. Harrison*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of murder in the second degree for killing Mase Burton. The killing occurred in the early part of July, 1888, in the city of Dallas, between 9 and 10 o'clock at night. The indictment charging appellant with the murder of said Burton was presented in the District Court of Dallas County on the 20th day of October, 1888. The judgment of conviction from which this appeal was taken and is prosecuted was entered of date March 11, 1891. There had been an intermediate trial, at which time the appellant had been acquitted of murder of the first degree. When the cause was called for trial on the 11th day of March, 1891, the appellant presented his application for a continuance of this cause, which was overruled by the court. The principal ground upon which appellant's motion for a new trial is based is this action of the court overruling said application for continuance. The continuance was sought because of the absence of two witnesses, Joe Collins and Frank Gillispie. As to diligence, the application shows that on the 18th day of February, 1891, the appellant caused a subpœna to issue to Dallas County for both of said named witnesses, which subpœna was duly served on said wit-

nesses on February 23, 1891. This cause was set for trial on February 25, and was continued by operation of law on February 27. When the succeeding term of the court convened the criminal docket was set for March 9, at which date this cause was set for trial on March 11. On March 10 defendant caused another subpœna to issue to Dallas County for said two witnesses. This process was returned not executed, because said witnesses were not found in said county. This is the entire diligence shown by the application. It is shown also that the witness Collins was absent from Dallas County, and was at Hearne, Texas.

By Frank Gillispie it was expected to be shown that on Monday night preceding the homicide he informed appellant that Mase Burton had been sleeping with his (appellant's) wife when he was away from home; that Burton told the witness that appellant did not need any wife; that he was going to take her away from appellant, and that Burton admitted to the witness that he had had criminal intercourse with appellant's wife, and was going to do so again. By Collins it was expected to be proved that Burton, the deceased, was keeping appellant's wife, and that he had seen Burton with appellant's wife a few nights before when appellant was down town. On Tuesday night appellant shot and killed Burton. This testimony is alleged to be material in view of the fact that appellant would show that he shot Burton while he was having intercourse with his (appellant's) wife on the back gallery. Said application does not show or allege that the communication made to him of the infidelity of his wife and the conduct of the deceased toward his wife as made by the absent witnesses was the first information he had received of such conduct, and the record shows it was not.

The application shows an utter want of diligence to have the witnesses in attendance upon the court, as well as a want of probable truth of the stated testimony. The application shows that on Monday preceding the killing these two parties communicated to appellant the evidence sought to be obtained. This was in July, 1888. No process was sought for these witnesses prior to the 18th of February, 1891, although he had been tried in the meantime for said killing.

Again, if on the 27th day of February, 1891, when this case was continued by operation of law, these witnesses were not present or had disobeyed the process served upon them, it was obligatory upon him to issue attachments for them promptly to enforce their attendance upon the court. This was not done. The application fails to state whether they attended the February term of court or not. The issuance of process, if necessary, after the 27th of February, 1891, was not satisfied by calling for and obtaining a subpœna for said two witnesses. If process was necessary for them after that date, attachments alone would satisfy the demands of the law. Chaplin v. The State, 7 Texas Ct. App., 87; Walker v. The State, 13 Texas Ct. App., 618; Long v.

The State, 17 Texas Ct. App., 128; Willson's Crim. Stats., secs. 2164, 2162, subdiv. 2. Our statute provides that the diligence which has been used shall be stated under oath, "and it shall not be considered sufficient diligence to have caused to be issued or to have applied for a subpœna in cases where the law authorizes the issuance of an attachment." Code Crim. Proc., art. 560, subdiv. 2. It is further provided, that "when a witness who resides in the county of the prosecution has been duly served with a subpœna to appear and testify in any criminal action or proceeding fails to so appear, the State or the defendant shall be entitled to have an attachment issued forthwith for such witness." Code Crim. Proc., art. 488; Long v. The State, 17 Texas Ct. App., 128. If the two alleged witnesses had disobeyed the subpœna served upon them at the February term of the court, it was obligatory upon appellant to resort to an attachment at once to enforce their attendance upon the court. The subpœna issued at the March term was not authorized by law, nor did it show any diligence under the statute. The application fails to show whether these witnesses did or did not attend the court in obedience to the subpœna served upon them in February.

Neither will this court nor the trial court supply by inference and presumption allegations not contained in an application for a continuance which should be stated therein. The application must be complete within and of itself in order to require this court to say it was erroneously refused. Presumption when indulged will and must be in favor of the rulings of the court in reference to the matter complained of, and not against same; and in regard to pleadings, presumptions when indulged must be taken most strongly against the pleader. The pleading is presumed to set forth correctly the matter complained of as desired to be understood by the pleader. Its defects will not be supplied by presumptions on the part of the court.

The probability of the truth of the evidence is not made to appear, but rather the contrary is apparent. If the statements of the two witnesses alleged to have been made to the defendant as to the adulterous acts of deceased with defendant's wife were true and made to him before the killing in July, 1888, it is not explained why process was not issued at an earlier date than February 18, 1891. This is somewhat emphasized by the fact that in the meantime the defendant had been once tried for this offense, and it is not shown why these witnesses were not under process to attend that trial nor any term of the court prior to February, 1891, although they lived all the time in the city of Dallas.

Again, the probability of the truthfulness of these statements, as well as the materiality of the same, is seriously affected by the further facts that neither the application nor the statement of facts shows that the killing occurred as soon as these facts were made known to defendant nor upon the first meeting that occurred between defendant and the deceased thereafter; but, on the contrary, it is shown that defendant must

have known of the intimate relations existing between his wife and the deceased long prior to the killing, inasmuch as he and the deceased had had a personal conflict over that matter about three weeks before the killing. The application does not allege that the information conveyed to him by the absent witnesses was the first that he had received of such conduct on part of deceased, nor does the application state that the killing occurred upon the happening of the adultery nor as soon thereafter as he met the deceased after ascertaining that fact. In order that such evidence be material it must be stated that the defendant killed the party guilty of the insulting conduct upon his first meeting with him after the happening of the insulting conduct and after he was informed of such conduct. The defendant, however, claims the materiality of the testimony is made apparent in view of the fact that when he shot and killed the deceased he (deceased) was having intercourse with his (defendant's) wife ".on the back gallery." This is an ingenious way of putting his case, but it is not borne out by the facts and is not a correct position. There were three living witnesses to the acts transpiring in and about the immediate scene of the killing, to-wit, the defendant, the defendant's wife, and one Cole. None of these testified except Cole. The State could not use as witnesses either the defendant or his wife. Cole's evidence says: "The killing occurred between 9 and 10 o'clock at night. The first I saw of any of the parties to the transaction I was lying down on a cot inside my door when I heard my dog bark, and looked up and saw a colored man, whom I soon recognized as the defendant, pass my door with a gun in his hand. He was in my yard at this time and going to the rear. I got up and came out on my back porch to watch him. He walked to the rear of the yard, then turned and walked toward the Central Railway track, passing out of my sight. He was gone but a minute or so when he came back again through my yard and stood just beside a closet. He stood there two or three minutes. A woman got up off a porch on the rear of a house facing the Central Railway and came out to where he was standing. The defendant said to her, 'Go back, you G—d damned bitch, or I will kill you, too.' The woman had spoken to him, but I could not hear what she said. At the above reply of defendant she turned and walked back toward the porch. When the woman got up from the seat on the edge of the porch and came out to where defendant was standing I saw a man. He was dressed in dark clothes and had been on the opposite side of the woman from me. The woman was dressed in white, so I did not see the man until she got up and walked out to defendant. As soon as the woman left defendant at his threat to kill her, and had walked about forty feet, the defendant raised his gun and fired at the man sitting on the porch, and then ran off. The man who had been fired at got up, hallooed, 'Lordy, I am shot!' ran through the house, across the railway track which runs in front of

the house, and fell on the right of way.    I went to him at once and saw
it was Mase Burton.    The woman who was sitting on the porch with
Burton at the time he was shot was Annie Massie.    She was the wife
of defendant.    Annie Massie lived at the house where the killing oc-
curred.    Two or three other colored people lived there also.    Mase
Burton did not live there; don't think Mack Massie did, but had seen
him there once or twice."    When the defendant first came into wit-
ness' yard he stopped at a well that was used in common by all the
neighbors, and stood there and watched the parties on the gallery,
"and when he saw me come to the door he walked south going around
the house and out of sight.    When he came back he went to the closet
about fifty feet from the porch where the killing occurred.    He stood
there two or three minutes.    From the time I saw the defendant come
through my yard with the gun in his hand until the shooting occurred
no words passed between deceased and defendant.    In order to get to
my house from town defendant must have passed the house of his wife
coming up the railway."

From this evidence it is evident that the defendant armed himself
and went to the place of the homicide for the purpose of doing just
what he did.    He had known of the conduct of his wife for some time
and her relations to the deceased.    If defendant armed himself under
the circumstances and facts detailed in this case and went in search of
the deceased and killed him, such killing would not be "sudden pas-
sion arising from an adequate cause," nor would it reduce such homi-
cide to manslaughter.    There must not only exist the adequate cause
coupled with the defendant's knowledge of its existence, but the dis-
turbed condition of the mind and the necessary "passion" must also
exist in order to reduce the killing from murder to manslaughter.    In
so far as manslaughter may be involved in the application for continu-
ance, the testimony of the absent witnesses, when viewed in the light
of the record before us and the facts proved on the trial, are not only not
material to the theory of manslaughter, but would have been prejudi-
cial to that phase of the case.    In the absence of the "passion" that
reduces a homicide to manslaughter, the unattended "adequate cause"
may become evidence of the most cogent force showing the antecedent
malice on the part of the slayer.    In such case the "adequate cause,"
unattended by the necessary "passion" rendering the mind incapable
of cool reflection, instead of constituting an extenuation of the crime,
may and would become an aggravating circumstance attending the
commission of the offense.    Equally untenable is the position that the
absent testimony is material in view of the fact that the defendant
killed the deceased while he was in the act of adultery with his (defend-
ant's) wife.    If defendant came upon the parties in the act of adultery
he would be justifiable in killing the paramour of his wife if such kill-
ing occurred before the separation of the parties.    Penal Code, art.

567; Price v. The State, 18 Texas Ct. App., 474. The statute provides that homicide is justified when committed by the husband upon the person of any one taken in the act of adultery with his wife, provided the killing take place before the parties to the act of adultery have separated. Penal Code, art. 567; Willson's Crim. Stats., secs. 959,960.

If defendant came upon the parties in the act of adultery and he killed the seducer of his wife before the parties separated, his right to kill could not be questioned, and the proof that the parties occupied this position and relation to each other at the time of the killing would preclude the conviction of the defendant of any grade of homicide. The justification of the homicide is based upon the fact of that relation to each other of the parties at the time of the homicide. The information conveyed to the husband that his wife had been previously known to commit adultery with the party slain could not materially benefit the husband under such circumstances. Its tendency would not be favorable to the husband unless it operated to put him upon notice of the infidelity of his wife in connection with the party slain. If that be its beneficial effect in this case, it would not be material, because defendant had known of the compromising relation of his wife toward deceased for three weeks at least prior to the time that these absent witnesses should have informed him of the facts.

A careful investigation of the record shows not only that the testimony was not material but that it was not probably true. Not only is the alleged absent testimony not probably true, but it is not probably true that defendant killed the deceased while he was in the act of adultery with his (defendant's) wife. Cole's testimony excludes that idea as we understand it. The continuance was properly overruled and the motion for new trial based on such ruling was properly refused.

We have considered the bill of exceptions and motion for the continuance as if properly presented to us. The motion itself does not state whether it is the first, second, or a subsequent application. We might indulge the presumption that it was the first, as the record does not show that the defendant continued the cause; or we might presume that it was the second application, inasmuch as by its allegations it was sought to comply with the statutory requirements of a second application. But we are not required to indulge in presumptions to aid attacks upon judgments of courts of record. The party complaining of error ought to be able to point it out plainly or with reasonable certainty at least. Our Supreme Court in passing upon this same question said "the record shows that the case had been pending in court some two or three years when the application was made, but whether it had been previously continued by appellants is not shown; but if it had not been, it was their duty to have shown it in their bill of exceptions to the refusal of their application; for, as has often been said, it is for the party alleging error to lay his finger upon it, or this court

must otherwise presume the judgment of the court below to be correct." Arnold v. Hockney, 51 Texas, 46–48. What was then said is peculiarly applicable to this case. Neither the bill of exceptions nor the application states whether the application was the first or a subsequent one. The case had been on docket from October, 1888, till March 11, 1891, the date of the conviction, and nothing is shown in the matter of continuances except in February, 1891, when it was continued by operation of law.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.