## WILL JOHNSON v. STATE.

### No. 1148. Decided October 25, 1911.

**1.—Burglary—Sufficiency of the Evidence.**

Where, upon trial of burglary, the evidence sustained the conviction, there was no error.

**2.—Same—Evidence—Bill of Exceptions.**

Where, upon appeal from a conviction of burglary, the question of admitting

testimony that appellant offered to sell the alleged stolen property at less than market price was not presented by bill of exceptions, the same could not be reviewed.

**3.—Same—Continuance—Want of Diligence.**

The onus is upon the defendant to establish the exercise of diligence in support of an application for continuance; and where defendant's witness was not shown to have been in attendance at the beginning of the term of court, and there was no further process asked for, the diligence was not sufficient.

Appeal from the District Court of Tom Green. Tried below before the Hon. J. W. Timmins.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—On December 16, 1909, the grand jury of Tom Green County, indicted the appellant, charging him with burglarizing the house of C. R. Kelly by force, with intent to steal. He was tried December 27, 1910, convicted, and given the lowest penalty of two years in the penitentiary.

The appellant has but three grounds of complaint of the judgment, as shown by his motion for a new trial and one bill of exceptions. One ground is that the evidence is not sufficient to sustain the conviction. We will merely give a summary of the evidence taken from the testimony of all the witnesses.

C. R. Kelly, in November, 1909, and for sometime prior thereto, owned and ran a restaurant in San Angelo, Texas. Shortly prior thereto, appellant had been in his employ in said restaurant, but was not in his employ at the time of the alleged burglary. The restaurant was kept open for business until midnight of every night. Kelly, the owner, did not remain that late, but left usually earlier in the night, leaving his employes to close up the house when they left. The appellant was in the kitchen of the restaurant owned by Kelly in the early part of the night on November 12, 1909, but left before the house was closed. Just about midnight, the restaurant was closed and locked up by the cook, who then left there. The back door to the restaurant was fastened with a spring lock. It could not be opened from the outside, but had to be opened from the inside.

The evening before the night of November 12th, or a day or two prior thereto, Kelly had purchased from one of the witnesses a case of thirty dozen eggs. The case was marked "Nimits House," and was placed at the time of the delivery, in a small store room in the restaurant building, which seems to have been between the kitchen and the restaurant proper where the tables were set and meals served.

This was the only case of eggs Kelly had in his house that evening and night.

When Kelly reached his restaurant the next morning, or whoever of his employes did so, it was found that the back door was standing open. One of the windows had been broken open by tearing away from it the boards that closed it, and this case of eggs was gone. The window was properly closed as well as the door the night before when the last employe closed and left the restaurant.

The next morning the appellant tried to sell a case of thirty dozen eggs to one of the witnesses who, after negotiating with him, declined to purchase. He thereupon took the case of thirty dozen eggs, which was marked as above noted, and offered to sell them to another one of the witnesses. To this witness he offered the eggs at a few cents per dozen less than the market price of eggs at the time. This party was a baker and agreed to purchase the eggs from appellant, but stated before doing so he must see the eggs to know that they were fresh. To the first witness to whom appellant offered to sell the thirty dozen eggs he claimed he got them off of a ranch. To the other witness he told that he got them shipped in there. The second person to whom he offered the eggs, after making the arrangement to buy them from appellant, had to go out in town to make delivery of bread. While he was gone the case of eggs was delivered at his place of business, and when he returned from the delivery of the bread he found them there. This case is shown to have had the same marks on the box as the case that Kelly had purchased before the burglary and that had been offered to each of the two purchasers. Soon after this witness returned from the delivery of bread, the defendant came back to his place of business to collect for the eggs. When he applied to the witness for the pay, the witness told him that the city marshal had come and got them, and the appellant thereupon went out the door and never came back for his pay any more. The city marshal got this case of eggs and delivered it or had it delivered back to Kelly. Kelly swore positively that it was the same case of eggs that he had bought shortly prior to the burglary and that was in his house at the time that it was burglarized.

We are of the opinion that the evidence clearly sustains the verdict, and was amply sufficient therefor. The court gave a correct charge on circumstantial evidence, and also substantially correct charges submitting the whole case to the jury. He charged on presumption of innocence and reasonable doubt. There was no exception to the charge of the court at the time of the trial, or afterwards, in the motion for a new trial.

Another one of appellant's grounds of complaint is to the admission of the testimony of one of the witnesses who testified that the appellant offered to sell him the case of eggs at less than the market price. This question is not presented by bill of exceptions, and we can not pass

upon it for that reason. As claimed in the motion for a new trial, we can see no error in its admission.

The only other question is whether the court committed error in overruling appellant's motion for a continuance and forcing him into trial. The application for continuance was for the want of the testimony of two witnesses, S. T. Harrison and A. S. Bullock, who were alleged to reside in Tom Green County. The sole allegations therein as to diligence, are as follows:

"Defendant represents to the court that he had used diligence to procure the attendance of said witnesses in this: On January 6th, 1910, he caused to be issued out of this court, a subpoena for the witness Harrison, which was on said date duly served upon said witness as is shown by said subpoena, together with the sheriff's returns thereon, which subpoena and returns are attached hereto, and made a part of this application: that on December 17th, 1909, the State caused a subpoena to be issued for A. S. Bullock, which was served upon said witness on December 22nd, 1909, as shown by said subpoena and sheriff's return thereon hereto attached and made a part of this motion."

Neither subpoena called for as an exhibit, appears as such exhibit or otherwise in the record. If the absent witnesses would have testified, as claimed by appellant in his motion, it would have raised the question of alibi for him. The concluding part of the motion is as follows:

"Defendant represents to the court that said witnesses have heretofore been in attendance upon this court and that they are not absent at this term by the procurement or consent of the defendant; that this application is not made for delay, and there is no reasonable expectation that the attendance of said witness can be secured during the present term of this court by a postponement of the trial to some future day of this term and defendant says he believes he can and expects to procure the testimony of said witnesses to the next term of this court.

"Wherefore, defendant prays the court that this cause be continued until the next term of this court."

The term of the court at which the appellant was tried convened December 12, 1910. He was tried December 27, 1910. The record does not show when the criminal docket was set, if at all. As shown above, the application shows that the appellant had the witness, Harrison, subpoenaed on January 6, 1910, and that he relied upon the State's subpoena for the other witness on December 17, 1909.

Article 518 of the Code of Criminal Procedure, says: "It shall be understood that a witness refuses to obey a subpoena if he is not in attendance on the court on the day set apart for taking up the criminal docket, or any day subsequent thereto and before the final disposition or continuance of the particular case in which he is a witness."

Article 524, Code Criminal Procedure, is: "When a witness, who

resides in the county of the prosecution and has been duly served with a subpoena to appear and testify in any criminal action or proceeding, fails to so appear, the State or the defendant shall be entitled to have an attachment issued forthwith for such witness."

This court, in the case of Long v. State, 17 Texas Crim. App., 129, says: "The onus is upon the defendant to establish the exercise of diligence in support of an application for a continuance. 'It shall be understood that a witness refuses to obey a subpoena if he is not in attendance on the court on the day set apart for taking up the criminal docket or any day subsequent thereto and before the final disposition or continuance of the particular case in which he is a witness.' Code Crim. Proc., art. 488. Where a defendant is relying alone upon the service of a subpoena, then his application for continuance, in order to be good in point of diligence, should affirmatively show that the witness was in attendance on the day set for taking up the criminal docket, and thereby excuse his failure to resort to an attachment. The burden is upon the party seeking a continuance to show himself entitled to it by definite, exact, and certain averments. Walker v. State, 13 Texas Crim. App., 620. Defendant's witness in this case was not shown to have been in attendance when the criminal docket was taken up, and his failure to procure an attachment for him was such want of diligence as would deprive him of his right to a continuance; and the court did not err in overruling his application."

Again, in the case of Skipworth v. State, 8 Texas Crim. App., 139, this court said: "The law requires of a defendant a rigid compliance with the exact terms prescribed for such application, and if there is a lack of diligence, apparent from the application or otherwise, in securing the attendance of his witnesses, its mandate is inexorable and the trial must proceed. In terms most explicit it informs the defendant and his counsel what shall constitute diligence, and if they see fit to rely upon matters outside the law to excuse their noncompliance with the law, they must take the consequences." See also, Walker v. State, 13 Texas Crim. App., 647; Massie v. State, 30 Texas Crim. App., 64, 16 S. W. Rep., 770; Hill v. State, 18 Texas Crim. App., 665; Mixon v. State, 36 Texas Crim. Rep., 66, 35 S. W. Rep., 394; Harvey v. State, 35 Texas Crim. Rep., 545, 34 S. W. Rep., 623.

As stated above, the application for continuance states that certain subpoenas are attached as exhibits. They do not appear in the record. In passing on the motion for a new trial, it is shown by the judgment of the court that evidence was heard thereon. Doubtless these subpoenas, with the returns on them, and other evidence in addition to the affidavit of one of appellant's attorneys, were heard. We must assume, therefore, that the evidence adduced on the motion for a new trial did not authorize the court to grant it, but justified its being overruled. The application for a continuance is clearly defective in that it is not shown that the witnesses were in attendance at the begin-

ning of the term of court on December 12, 1910, but we take it therefrom that it is reasonably shown that they were not in attendance at that time, because in the latter part of the motion copied above it is stated "that said witnesses have heretofore been in attendance upon this court." We take it that at most, this applies to the previous term of the court. The motion for a continuance, in our opinion, was clearly insufficient in that it does not show sufficient diligence by the appellant to procure the attendance of the witnesses.

There being no reversible error, the judgment will be, in all things, affirmed.

*Affirmed.*