*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the court.

---

## G. E. VICKERS V. THE STATE.

No. 9991.   Delivered June 9, 1926.

Rehearing granted October 18, 1926.

**1.—Rape—Continuance—Diligence Insufficient—Properly Refused.**

Where, on a trial for rape, appellant asked for a continuance on account of absent witnesses, and it was shown that the witnesses were in attendance at a former term, and that said witnesses were absent on the first day of the term at which the case was tried, and no attachment was asked for said witnesses, proper diligence is not shown, and there was no error in refusing the continuance. Following Long v. State, 17 Tex. Crim. App. 129, and other cases cited.

**2.—Same—Evidence—Hearsay—Improperly Admitted—Rule Stated.**

Where a witness was erroneously permitted to detail a part of a hearsay declaration of the mother of prosecutrix, made to him by her, and objection being sustained by the court to said testimony, the appellant should have offered a special charge asking the court to instruct the jury to disregard that part of the hearsay statement testified to, and in the

absence of such a requested instruction no error is presented, but see opinion on rehearing.

### 3.—Same—Argument of Counsel—Not Improper.

On a trial for rape, physicians having testified as technical experts as to the private parts of a female, there was no impropriety in permitting the state's attorney to discuss and explain this testimony as it was understood by him.

### 4.—Same—Indictment—Allegation of Age—Sufficient.

Where an indictment for rape, under the age of consent, charged that the prosecutrix was under fifteen years of age, same was sufficient. While the statute provides that eighteen years is the age of consent, if the indictment alleges any age, provided it be less than the age of consent, it is sufficient.

#### ON REHEARING.

### 5.—Same—Evidence—Hearsay—Improperly Admitted.

On rehearing, by appellant, the attention of the court being directed to his bill complaining of the admission of the hearsay declarations of the mother of the prosecutrix, made in the absence of the appellant, and it appearing by said bill that the testimony was objected to when offered, and that same was hearsay and damaging testimony, it was not necessary, as was held in the original opinion, for appellant to request a special charge withdrawing the testimony from the jury; and for the error in admitting same, the affirmance of the cause is set aside, and same is now reversed and remanded.

Appeal from the District Court of Crosby County. Tried below before the Hon. Clark M. Mullican, Judge.

Appeal from a conviction of rape, penalty fifteen years in the penitentiary.

The opinion states the case.

*Vickers & Campbell* of Lubbock, for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

BERRY, JUDGE.—The offense is statutory rape and the punishment is 15 years in the penitentiary.

The prosecutrix was about nine years old at the time of the alleged offense and was about 11 years old at the time of the trial. She was the stepdaughter of the appellant. The question most seriously presented by appellant is as to the sufficiency of the evidence to support the verdict. Prosecutrix testified among other things to the following:

"If I tell you whether or not my stepfather and myself left

the house together and went off anywhere that evening, will you not let him kill me? He said he would kill me. My stepfather and myself left the house together that evening and went out in the pasture. He made me go. That happened between sundown and dark. I do not know just how far he and I went from the house, and I never looked back to see if we went out of sight of the house, but we went out into the cow pasture. Mr. Vickers did something to me when we got out into the pasture. He did ugly things to me. I got down on the ground, he made me do that, and he got on me, and he unbuttoned his trousers, and he put his private in my private, and it hurt me. As to whether or not he ever made any threats to hurt me in any way if I said anything about it; the first time when I was at grandmother's I said that I didn't want to and he picked up the gun and pointed it at me and said if I told it he would shoot me. That was at Bowie, Texas, and that was the first time. This time out in the pasture was not the first time that he fooled with me. He fooled with me several times, I don't know how many times, every time he could get me away from my mother he would fool with me. Doing the same thing he did out in the pasture. After this trouble out in the pasture we drove the cows on up to the house, and when we got about half way we met mother at the cow pen and Mr. Vickers picked up a stick and threw it at mama and said, 'Mama, why ain't you at home resting?' As to whether or not I told mother about having the trouble, she followed us. I don't know when my mother first found out about it. The next morning she made me tell her whether or not it was so. She had followed us into the pasture and I told her that it was so. That was the next morning. It was two or three days after I told my mother about this before she and my stepfather separated. A doctor at Slaton examined me and I have seen that doctor here this morning. His name is Dr. Adams.

"I don't know whether that was the next morning after we were in the pasture, or the second morning after, that we were in Slaton. I told my mother about that the next morning after it occurred. I understand what you mean when you say 'his privates.'

"I tell the jury that he did actually put his privates in my privates, he is guilty, he did. He did that to me, and at more than one time, and he threatened to hurt me or kill me if I told about it. My mother and I were living in Crosby at that time and the pasture where he had intercourse with me was down there on the farm where we were living at that time in Crosby

County and that all occurred in that county. I don't remember when it was."

On cross examination she testified as follows:

"He had had intercourse with me before we went to New Mexico. He had put his privates into my privates before we went to New Mexico. He told me that he put his privates in my privates, he did it, I know it myself and he knows it, no one told me to tell that he had done that. It hurt me when he did that. He had done that same thing to me a good many times before this occurrence out in the pasture. He did that same thing to me twice before we went to New Mexico, but he did not do that to me while in New Mexico, because he didn't have a chance there. I never did tell my mother about this, she caught us, because he warned me he would kill me."

Dr. S. H. Adams testified that he examined the prosecutrix in July, 1923, and the other testimony shows that this examination took place the second day after the alleged rape. He testified that he found an abnormal dilation of the vagina but no laceration. That he could introduce his finger without pain as far as the cervix, that is the lower part of the womb which is about two inches. He further testified that the child no doubt had been tampered with in some way but what caused the dilation he could not say. He testified that the hymen was absent and within a child of that age he could not have made an insertion with his finger if her vagina had been in a normal condition. That there appeared to be a slight redness of the vagina. As to how long prior to the examination the penetration, if any, had been made, he could not say and testified that he did not think that any matured, full grown man's penis had made penetration of the child. But he testified that there could have been a partial penetration.

On cross examination, he testified that the condition of the hymen showed a complete rupture of it, but it looked like it had not taken place in the last two or three days. He testified that he did not think, from his experience as a practitioner and from his knowledge of human anatomy, that the condition that he observed in the vagina of this child could have been caused by voluntary self manipulation. He again averred that in his opinion the condition in this instance was such that there could have been partial penetration. He further testified that he inserted his finger about two inches and did not try to go any further because he had reached the cervix. He further testified that the head of a normal male organ could have made an entry

there of perhaps a half to three-quarters of an inch without causing laceration.

The witness Dr. Green testified that he also examined the child and the record shows that this examination took place about two days later than Dr. Adams' examination, and Dr. Green gave it as his opinion that her condition was normal with the exception that the hymen was obliterated. He further gave it as his opinion that she had not been penetrated by a male organ. On cross examination, however, he said:

"The vulva is the outside parts of the female organ. The size of that opening depends on the person, it is in proportion to the size of the child. At her age I could have inserted the finger into the lips of the vulva without laceration and I suppose he could have done that. * * * If he didn't do any more than put the penis into the vulva he could not have caused and would not have caused any laceration in the vulva, he couldn't have done that. If he had introduced his penis into the lips of the vulva and had made a great pressure on it, it would not have effected the organism any except right at the time of having intercourse."

The appellant testifying in his own behalf denied any act of intercourse or improper relations with the child. He admitted, however, that she was with him at the time and place stated by her and admitted that the next morning after prosecutrix had been alone with her mother, his wife charged him with raping the child, but claimed his wife often got mad at him. On cross examination appellant testified that of all the mad spells his wife had ever had she had never accused him of fooling with the child but one time.

The witness, Ernest Grant, testified that he was at George Vickers' house on the 25th of July at which time the indictment charged the offense of rape and that he slept in the house the night of the alleged occurrence and that they all had supper together that night and breakfast together the next morning, and that he slept in the house again the second night, and the next morning was when they took the little girl to Slaton. That he was present when those people came back to the house after bringing the cows from the pasture but did not notice anyone crying or anything unusual with George Vickers or his wife or with prosecutrix; but that on the second night was the first time he noticed anything; that he heard them talking that night but could not understand anything that was being said.

On cross-examination by the state this witness testified that

he noticed something a little unusual the second night; that night, after they went to bed he heard someone crying in the other room, or snubbing and heard a noise but couldn't understand everything; that he heard the noise and they got up and left the house, but that he didn't know who got up and left the house, but presumed it was Mr. and Mrs. Vickers, as they were the only two in the other room besides the little girl. That he heard someone moaning or crying and could tell who it was, it was Mrs. Vickers. That he heard Mrs. Vickers say one time that she was suffering now but he would suffer in the long run and he was going the next morning, and that was all he understood.

On this testimony the appellant earnestly contends that the state has failed to make a case and that under the authorities it is the duty of this court to grant a new trial. He cites many cases which he contends support his proposition. In view of the earnest insistence of the appellant, we have carefully examined each of the cases cited and will discuss the most important cases presented.

The case of Montresser v. State, 19 Tex. Crim. App. 281, was reversed by this court because of the insufficiency of the testimony. In that case, however, Judge Wilson held that the testimony of the child was in many respects open to suspicion. These suspicious circumstances were pointed out by him as being first, her tender years, which rendered her susceptible to the influence of malicious and designing persons, and it was shown that her father and the defendant were not upon friendly terms. She testified through the medium of an interpreter, stating that she could not speak the English language, but could only speak the German language, and yet she detailed conversations which she had had with the defendant who, it was proved, could not speak the German language. She made no outcry when she was outraged. She made no complaint of the outrage for more than three days after it occurred. She went about and played with other children as usual. No traces of the outrage were discovered upon her clothing nor did her appearance and demeanor indicate that she had been injured, except that upon examination, on the fourth day after her alleged injury, her private parts were found to be swollen, sore, inflamed, and somewhat lacerated, as if they had been penetrated by the male organ. The place where she located the commission of the crime was a room in the second story of defendant's house, which house was in the city of Dallas, adjacent to other houses which were

at the time inhabited, and very near also to the house of her father. Defendant's house was lightly constructed of wood, and a noise in one part of the house would pervade the whole building. She stated that the crime was committed about 4 o'clock p. m. on Saturday, the 21st of February, 1885. During the whole of that evening defendant's wife and a servant woman were in and immediately about the house; heard no noise upstairs—did not see the child on the premises, and did not see the defendant therefrom soon after dinner until supper-time.

Appellant also cites the case of Gazley v. State, 17 Tex. Crim. App. 267. This case was also reversed on the facts, but it is authority for the proposition that there may be a conviction for rape upon the uncorroborated testimony of the injured female. In this case, the prosecutrix made no outcry or complaint until the elapse of eleven days thereafter, when she claimed defendant had ravished her, and it was only after it was discovered by her mother that the child was afflicted with some disease of her private organs. The record discloses that time and again she denied that appellant had troubled her. And it was only after habitual questioning by her mother and her aunt that she said the appellant was the guilty party. A bare statement of the facts in the Gazley case is sufficient to show that it is not in point.

The case of Draper v. State, 57 S. W. 655, was reversed by this court because of the insufficiency of the testimony, but in that case, three physicians testified that the private parts of the prosecutrix, external and internal, were normal and that there was no evidence that any violence had been used on her. At least two of the examining physicians testified positively that she had not been penetrated. A statement of facts which is manifestly different from that found in this record.

Appellant cites the case of Galaviz v. State, 198 S. W. 946. The Galaviz case goes no further than to hold that penetration must be proved beyond a reasonable doubt and that in view of the prosecutrix's contradictory statements with reference to penetration, that the state had not met the burden of proof in this case.

In the case of Petty v. State, 249 S. W. 849, which appellant cites, prosecutrix denied penetration and it was on that account that the case was reversed.

The case of Kinnon v. State, 42 S. W. 376, cited by appellant, is in nowise based on a statement of facts similar to that found in this record. In the Kinnon case, prosecutrix was the sole wit-

ness for the state and her evidence was that defendant drove her in his buggy, meeting many people, before he took her to the woods where they had intercourse. That she made no outcry on the way, although she knew his intentions, and that she made no complaint for several weeks after the act. The record further discloses that she was over sixteen years of age.

In the case of Wallace v. State, 89 S. W. 827, cited by appellant, it is said:

"The only question for revision relates to the sufficiency of the evidence. The evidence is quite conflicting as to the age of the child, but the testimony on the part of the state amply supports the conviction. Appellant also insists that there is no evidence corroborating prosecutrix. Under the law this is not necessary, however, much as it may be desired that her testimony should be corroborated wherever the state can do so."

In the case of Alcorn v. State, 94 S. W. 468, the record shows that no physical examination was made of the girl; that during the absence of her mother and other members of the family from appellant's house, appellant raped prosecutrix, but the wife of appellant was in the room at the time. No outcry was made by prosecutrix at the time or directly afterwards.

In the case of Donoghue v. State, 79 S. W. 309, the record shows that prosecutrix claimed that appellant raped her twice while she was sleeping on the same bed with appellant's wife, that she made no complaint, and that two or three days thereafter her mother discovered her walking peculiarly and upon being questioned she told her mother what appellant had done to her. Prosecutrix was impeached by several of her neighbors, they declaring her reputation for truth and veracity to be bad. The record also shows that she had previously made similar accusations against another party which had proven false. She also was contradicted on material matters by her mother. In that case the evidence was held insufficient.

We have examined the other authorities presented by appellant and have reached the conclusion that none of them are authority for the proposition that this case should be reversed because of the insufficiency of the testimony. We think that the testimony of prosecutrix taken all together is not of such an unreasonable nature as to be contrary to human experience. We think that her explanation as to why she did not tell her mother promptly upon return to the house is reasonable under the authorities. If appellant had threatened her life in the event she told this, that would justify her in not disclosing it

while he was present. The record shows that on the morning following the alleged rape when she was alone for the first time with her mother she did disclose the affair to her. The appellant's own testimony shows that immediately after his wife and stepdaughter were left alone, his wife began to make accusations against him based on what the child had told her. His testimony further corroborated the girl in every detail as to the opportunity for the act of intercourse testified to by the child. The only contradiction between them of a material nature is as to the actual happening of the act and the state would hardly be required to furnish positive corroboration of this particular detail of the transaction. We do not agree with appellant's counsel to the effect that the child's testimony taken as a whole is susceptible of the conclusion that she testified that her mother actually saw her stepfather and her in the act of intercourse. It is true that in one place in her testimony she says that her mother "caught" her, but we think that this does not necessarily mean that the child intended to say that her mother saw them in the act of intercourse. A careful review of this testimony and of the authorities presented, convinces us beyond question that the jury was warranted in concluding that the appellant was guilty as charged.

We are not in accord with appellant's contention that the court erred in refusing to grant his application for a continuance. Said application is based on the absence of certain witnesses, and the application itself shows that while the witnesses attended at a former term of court, it fails to aver that they were in attendance at the first day of the present term and it shows that the clerk reissued subpœnas for such witnesses and forwarded same to the sheriff of Wichita County. The record shows that the term of the court at which this trial took place convened on the 29th day of June and the case was not called for trial until the 6th day of July. The application shows that the witnesses were under subpœna and it does not show that any attachment was issued for them, although they were absent on the first day of the term at which the trial took place, and it is well settled that diligence is insufficient if only a subpœna was applied for when the law authorizes an attachment. Long v. State, 17 Tex. Crim. App. 129. Massey v. State, 30 Tex. Crim. App. 64; 16 S. W. 770. King v. State, 148 S. W. 325.

Appellant complains at the court's action in permitting the witness, Martin, to testify to a purported conversation had with the defendant's wife in the absence of defendant. The bill shows

that the appellant objected to said testimony and the court sustained the objection, but never instructed the jury to not consider such evidence theretofore offered. The record fails to show that appellant offered a special charge asking the court to so instruct the jury, and in the absence of same no error is shown by this bill.

Two other bills of exceptions complain at the argument of the District Attorney to the effect that "The law says that the vulva and lips constitute a part of the female organ," and also to the effect that "The law says that it is only necessary for the lip of the vulva to be penetrated." The terms used by the District Attorney are found in the testimony of the physicians who testified in the case and are descriptive of portions of the female organ of the prosecutrix. The law is certain to the effect that in order to constitute rape, the penetration need not be of any particular depth. This being the law, and the facts being as above stated, we think the District Attorney was within the record in making the argument complained of.

Appellant filed a motion in arrest of judgment on the ground that the indictment charges prosecutrix was under fifteen years of age, it being his contention that as the statute has been amended to make eighteen years the age of consent that the indictment, therefore, did not state an offense. We cannot agree with this contention. The statement that prosecutrix was any number of years of age, provided it be less than the age of consent, is sufficient to charge statutory rape.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

BERRY, JUDGE.—Appellant makes serious complaint in his motion of our disposition of his bill of exception No. 5. We have carefully examined it again. The state's witness, Martin, was on the stand testifying to what occurred the morning after the alleged rape. He said "Vickers (appellant) went on to work, and after he went on to work, Mrs. Vickers told me—". At this point appellant objected to what anybody told witness out of the presence and hearing of appellant. The court overruled the objection and witness swore that Mrs. Vickers, appellant's

wife, told him that morning what she had wanted to tell him the night before was that she had more trouble than she could bear; that Vickers had carried her little girl in the pasture on the day before and brutally abused the child and that she wanted a message sent to her boys, and that she had been prevented by Vickers from sending the message, and that it was impossible for her to get a message.   At this point appellant renewed his objection and the court sustained the same.   The bill states that the court did not instruct the jury not to consider this testimony, and in our original opinion we seemed to consider the fact that appellant did not ask a special charge instructing the jury not to consider the testimony as rendering the complaint of the testimony unavailing.   A careful analysis of the bill shows that appellant's complaint in said bill is not of the refusal of an instruction, but is based on his objection to the admission of the hearsay and damaging testimony.   The witness had reached a point where his language indicated that he was about to state what Mrs. Vickers "told" him.   This objection the court overruled and permitted the witness to testify what she told him. This was hearsay of a very damaging character and should not have been admitted.   The bill has no qualification and no explanation and shows that the exception taken was to the admission of the hearsay evidence.

We hardly think that after admitting it over a valid objection that thereafter sustaining an objection renewed would put appellant in such an attitude as to deprive him of his rights to complain at the admission of the testimony.

As above stated, the testimony was hearsay of the very rankest type, and was very damaging to the appellant's defense in the case.   It follows, from what we have said, that in our view the judgment of affirmance should be set aside and the motion for rehearing granted, and the case should be reversed and the cause remanded, and it is so ordered.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.